UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

REDPRAIRIE CORPORATION,

        Plaintiff,

        v.                               Case No. 05-C-1072

JEROME'S FURNITURE WAREHOUSE,

        Defendant.

## ORDER ON FINAL PRETRIAL MOTIONS

A jury trial in this matter is scheduled to commence on June 23, 2008. In preparation for trial the parties submitted their respective pretrial reports and accompanying these reports, each party filed a motion in limine. (See Docket Nos. 154, 155.) Both parties have responded, (Docket No. 172, 184, respectively,) and replied, (Docket No. 192, 190, respectively).

Additionally, on June 4, 2008, RedPrairie filed an expedited non-dispositive motion pursuant to Civil L.R. 7.4, (Docket No. 182), to which Jerome's has responded, (Docket No. 195).

**DEFENDANT'S MOTION IN LIMINE**

The defendant seeks an order "[p]recluding Plaintiff from presenting any evidence on the interpretation of ¶ 13.3 of the Software License and Service Agreement ("SLA") contrary to its express meaning." (Docket No. 154 at 1.) The ¶13.3 of the SLA states:

> Neither party shall be liable to the other for any indirect, incidental, punitive, special or consequential damages of any kind, including without limitation, damages for loss of good will, work stoppage, data loss, lost profit or computer failure, whether based in contract, warranty, indemnity, tort, negligence, strict liability, or any other theory at law or in equity. Neither party's total aggregate liability to the other party for breach of this agreement shall exceed the amounts paid for the license.

(Docket No. 80-13 at 9.)

Because the defendant never paid for the license, the defendant argues that ¶13.3 thus precludes the plaintiff from recovering any damages for the defendant's breach of the contract.

The court shall deny the defendant's motion in limine. First and foremost, the court finds that the defendant has waived this argument by failing to raise it earlier.

The issue of damages was explicitly raised by RedPrairie in its motion for summary judgment. (Docket No. 84 at 16-18.) Jerome's objected to RedPrairie's motion on the basis that the damage calculation constituted an expert opinion that the witness was not qualified to provide and that certain dollar amounts were not accounted for. (Docket No. 99 at 17-18.) At no point in its response to RedPrairie's motion for summary judgment, (Docket No. 99), or in its own motion for summary judgment, (Docket Nos. 77, 78), or reply, (Docket No. 117), did Jerome's raise the argument that RedPrairie was barred from recovering any damages because Jerome's had not paid for the license.

Therefore, this court, in its decision and order resolving the motions summary judgment stated that it was unable to grant the plaintiffs' motion for summary judgment with respect to damages because there was a dispute of material fact as to whether the entire sale price, less a 5% commission, would have been profit to the plaintiff, and it was unclear whether certain other alleged damages were recoverable. (Docket No. 137 at 12-14.) Thus, the court denied the plaintiff's motion for summary judgment with respect to damages and this matter proceeded to trial to determine the sole issue of the amount of RedPrairie's damages, if any.

Following this ruling, Jerome's moved for reconsideration, (Docket Nos. 138, 139, 146), and again failed to raise this argument that RedPrairie's damage claim is barred by ¶13.3 of the SLA.

If the court had granted RedPrairie's motion for summary judgment with respect to damages, and thus resolved this case, Jerome's would have been precluded from raising this new

theory of defense for the first time on appeal. See Laborers' Int'l Union v. Caruso, 197 F.3d 1195, 1197 (7th Cir. 1999) (citing cases); Cooper v. Lane, 969 F.2d 368, 370 (7th Cir. 1992) (citing cases) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions."). However, the court denied RedPrairie's motion, and thus, Jerome's now seeks to offer this new and more comprehensive defense to RedPrairie's claim for damages.

In fact, as Jerome's presents its argument now, it should have raised this interpretation of ¶13.3, not only as a defense to damages, but as a defense to RedPrairie's claim that a binding contract was formed. Specifically, for the first time in its reply brief, Jerome's argues that the SLA established two prerequisites to the establishment of a valid contract—the execution of the contract and the payment of the license fee. (Docket No. 192 at 5.) Jerome's failure to raise this argument further supports plaintiff's contention that this argument is simply a last-ditch "Hail Mary" pass. (See Docket No. 184 at 5.)

District courts within the Seventh Circuit have frequently applied the Court of Appeals' general rule that matters not raised in response to a motion for summary judgment are deemed waived, but this issue has arisen most frequently when it is a plaintiff waiving a claim by failing to challenge a defendant's motion for summary judgment. See, e.g., Kowalczyk v. Walgreen Co., 2005 U.S. Dist. LEXIS 9665, 38-37 (N.D. Ill. 2005) (citing cases).

The present case is slightly different. It was the plaintiff's motion for summary judgment and the defendant did respond to the plaintiff's request for damages. In fact, the defendant not only responded but was successful in defeating the plaintiff's motion for summary judgment in this respect. However, the defendant's response replied upon the uncertainty of the plaintiff's damages, and the defendant made no allusion to its present argument that its defense to the plaintiff's request for damages is total.

Although this court has been unable to identify any district court within the Seventh Circuit that has addressed the question of whether a defendant may waive a theory of defense by entirely omitting it from a response to a motion for summary judgment, the Court of Appeals has held that defendants are precluded from raising new theories of defense for the first time on appeal. See, e.g., Manor Healthcare Corp. v. Guzzo, 894 F.2d 919, 922 (7th Cir. 1990). It is the conclusion of this court that under the facts presented, this rule is appropriately applied in this case.

Although Jerome's does not allege that its motion in limine is dispositive, in its revised final pretrial report, the defendant says that if its motion is granted, the trial will be very short, (Docket No. 171 at 2). The court agrees that the trial would be very short; in effect, there will be no need for a trial on damages. The argument that the plaintiff was precluded from recovering any damages pursuant to ¶13.3 of the SLA because nothing had been paid for the license should have been plainly apparent to Jerome's at the summary judgment stage. By failing to raise it at that point, the court concludes that Jerome's is precluded from raising the issue now.

Additionally or alternatively, the court finds that the attendant circumstances created a latent ambiguity in the SLA that requires the court to look beyond the text of the contract to discern the intent of the parties. "[A]n ambiguity is defined as latent when it does not appear from the face of the instrument but is revealed by other evidence." Stevens Constr. Corp. v. Carolina Corp., 63 Wis. 2d 342, 355, 217 N.W.2d 291, 298 (1974) (quoting 32A. C. J. S., Evidence, p. 428, sec. 961).

> It is only where the words are "plain, both in themselves and when applied to the subject with which they deal," that they "must be taken according to their ordinary import," no other meaning being added thereto or taken therefrom. Otherwise, "The contract may be read very different from its literal sense" "so long as its reasonable scope is not departed from, if necessary to give effect to what the minds of the parties really met upon."

Id. at 354-55, 217 N.W.2d at 298 (quoting Klueter v. Joseph Schlitz Brewing Co., 143 Wis. 347, 353, 357, 128 N. W. 43 (1910)).

Although the final sentence of ¶13.3 initially appears clear on the surface, when applied to the present situation and reviewed in the context of the entire contract, its ambiguity is revealed. It is clear from the text of the SLA that the SLA was not drafted with the expectation that there would be anything but a negligible amount of time between the parties entering into the contract and the payment of the licensing fee. The SLA calls for the licensing fee to be paid upon the last party signing the agreement. (See Docket No. 80-13 at 2, 12). Thus, the past tense "paid" was the only reasonable word for the parties to use in ¶13.3 when they sought to set a ceiling for the maximum damages recoverable by either party.

However, as was made clear to this court from the evidence presented at the summary judgment stage, the parties deviated from the anticipated course of conduct because time was of the essence and Jerome's wanted RedPrairie to begin work on the project as soon as possible. Jerome's acknowledges that the purpose of signing the SLA when it did was to have RedPrairie begin working on the project as soon as possible (Docket No. 172 at 4-5), but then contradictorily argues that the SLA did not create any obligations upon RedPrairie until Jerome's paid the licensing fee, (Docket No. 192 at 5). Perhaps Jerome's is now attempting to utilize this new ¶13.3 argument in an effort to revive the argument that the SLA is not a binding contract, which would be another reason why Jerome's was required to have raised this argument regarding ¶13.3 at the summary judgment stage.

The court has rejected Jerome's argument that the SLA was not a binding contract. It created mutual obligations upon both parties and included in these was Jerome's obligation to pay the licensing fee. It was not as if Jerome's did not comply with the explicit terms of the SLA and pay upon signing the agreement because it had immediate and extraordinary buyer's remorse. Rather, the parties mutually agreed to deviate from the terms of the contract regarding the terms of payment, thus creating the present latent ambiguity.

Jerome's argues that the phrasing of ¶13.3 was an intentional agreement of the parties whereby Jerome's would not put any money at risk, until after it approved the functional specifications. (Docket No. 192 at 5.) The court finds this argument unreasonable and not supported by any evidence. Jerome's itself acknowledges that the SLA was intended to get RedPrairie working on the project. Jerome's is now attempting to rely upon ¶13.3 to render the SLA a contract without any meaning or practical effect, an argument the court rejects as absurd.

It is clear to this court that it was not the parties' intent to create a sort of loophole through which the defendant could slip if it entered into a binding contract but then refused to pay. Parenthetically, defendant's recent interpretation would apply with equal impact had the plaintiff breached the contract and the defendant sought damages. In fact, counts four through six of the defendant's counterclaim seek damages arising out of the contract; the defendant would be hard pressed to contend, on the one hand that ¶13.3 only bars the plaintiff from seeking contract damages. The fact that the defendant filed a counterclaim containing contract claims and did not raise this argument in response to the plaintiff's motion for summary judgment clearly demonstrates the parties' intent. The parties' intent was to retain the ability to seek damages should the other breach the contract.

Rather than enforcing a contract that results in an unreasonable conclusion and one that no party bargained for, the court shall give effect to the parties' clear intent. Paragraph 13.3 sets a ceiling upon damages and limits the types of damages that are recoverable. Thus, the maximum amount of damages recoverable by the plaintiff is the amount that Jerome's agreed to pay, i.e. $289,850.00.

## PLAINTIFF'S MOTION IN LIMINE

### Exclusion of Mike Bandemer

RedPrairie seeks an order excluding the testimony of Jerome's damage expert and testimony relating to liability issues already decided. (Docket No. 155.) RedPrairie seeks to exclude the testimony of Jerome's damage expert, Mike Bandemer ("Bandemer"), because Jerome's never disclosed the substance of the evidence he would present at trial. Specifically, RedPrairie argues that Bandemer's report is devoid of rebuttal to the report of RedPrairie's own expert, Ron Bero ("Bero"), and instead states simply that he lacks the information necessary to challenge RedPrairie's expert.

Jerome's responds that Bandemer's report is an appropriate expert report and thus Bandemer should be permitted to testify because the report outlines the problems he identified in Bero's report. Specifically, Bandemer criticizes Bero for interpreting ¶13.3 of the SLA as setting a cap of $289,850.00 when Jerome's alleges that Bandemer interprets ¶13.3 as limiting damages to $0.00; Bero included incidental damages that are excluded by ¶13.3; and Bandemer criticized Bero's reliance on RedPrairie for data and assumptions that Bero did not confirm. (Docket No. 172 at 7-8.)

In view of the court's prior ruling on ¶13.3, many of the criticisms raised by Bandemer are not relevant. First, Bandemer's report in which he interprets ¶13.3 as precluding RedPrairie from recovering damages is inconsistent with the court's ruling. Additionally, it is a legal opinion that Bandemer is not qualified to provide.

Similarly, whether or not incidental damages are recoverable under the SLA is a legal issue for the court to decide. Bandemer's expertise is not needed for this issue, as the SLA clearly excludes such incidental damages. However, to the extent that Bero may have included incidental

damages within his overall damage calculation may be a matter for rebuttal testimony. There may also be challenges to the manner in which Bero has calculated direct damages.

Therefore, the court is unable to say that Bandemer's report, which is included in the record as Docket Number 157-3, is devoid of appropriate rebuttal. For example, Bandemer criticizes Bero's report by noting that Bero apparently failed to consider commission expenses for others involved in the sale, ¶IV, 3, a, did not account for all marketing hours, ¶IV, 3, c, or account for other reasons why RedPrairie may have had to layoff employees, ¶IV, 11. These criticisms are appropriate rebuttal that Bandemer, as a damages expert, is qualified to offer.

Therefore, RedPrairie's motion to preclude Bandemer from testifying shall be denied. Bandemer shall be permitted to testify to the extent that the substance of his testimony was disclosed in his expert report and that his testimony constitutes rebuttal that he is qualified to offer.

However, the court shall preclude Bandemer from attempting to rebut or otherwise undermine Bero's conclusions based upon the fact that Bandemer did not receive the information that he needed to independently review Bero's conclusions. Jerome's does not dispute RedPrairie's representation that it provided Jerome's with all the information regarding damage calculations that Jerome's requested. (Docket No. 156 at 9.) Permitting such testimony would likely confuse the issues and inappropriately create the impression in the mind of the jury that RedPrairie did something improper. Further, a rebuttal expert lacking the information that the initial expert relied upon is not an appropriate basis to rebut that expert's testimony.

**Exclusion of Brooks Hilliard**

RedPrairie seeks an order precluding Jerome's other expert, Brooks Hilliard ("Hilliard") from testifying because Hilliard's report does not rebut Bero's opinions. (Docket No. 156 at 13.) Jerome's responds that it may call Hilliard as a rebuttal witness but cannot know if he will be called to testify until it sees what evidence RedPrairie presents. Specifically, Jerome's states:

> it is conceivable that Mr. Hilliard could provide rebuttal testimony consistent with his report about why signing the SLA without the functional specifications would be tantamount to assuming an unknown risk. He may also offer testimony on the industry practice of including damage limitation provisions in software contracts.

(Docket No. 172 at 8-9.)

The issue to be resolved at trial is the amount of RedPrairie's damages, if any. The testimony that Jerome's represents Hilliard may offer is not relevant to this issue and therefore shall be excluded. Further, this potential testimony does not rebut Bero's report, and thus, in light of this court's prior order limiting Hilliard's expert report, (Docket No. 72 at 1), the court shall grant RedPrairie's motion to preclude Hilliard from testifying.

### Exclusion of Certain RedPrairie Representatives

RedPrairie seeks to preclude Jerome's from introducing the deposition testimony of Brian Smith, Mike Taynor, Rohit Desai, and Jon Withers on the basis that their testimony does not relate to the question of RedPrairie's damages. (Docket No. 156 at 13.) Jerome's responds that the testimony of these witnesses is appropriate if the court permits the interpretation of ¶13.3 of the SLA to be an issue at trial.(Docket No. 172 at 7.)

As discussed above, the interpretation of ¶13.3 in that it precludes the recovery of damages shall not be an issue at trial. Therefore, the court shall grant RedPrairie's motion to preclude Jerome's from introducing the deposition testimony of these witnesses.

## PLAINTIFF'S 7.4 MOTION

Following the final pretrial conference in this case, the court permitted Jerome's the opportunity to file an amended exhibit list, (see Docket No. 178 at 2, ¶10), which it did on June 3, 2008, (Docket No. 180). On June 4, 2008, RedPrairie moved to strike Jerome's exhibit 1066, which is a contract between RedPrairie and another customer, and that was filed as an exhibit to the complaint in case number 07-C-1159, a separate case currently pending in this district.

-9-
Case 2:05-cv-01072-AEG   Filed 06/09/08   Page 9 of 10   Document 197

RedPrairie speculates that Jerome's seeks to use this other contract in an effort to argue for some favorable interpretation of the SLA. Additionally, RedPrairie argues that this document is irrelevant. In response, Jerome's confirms that it intends to introduce exhibit 1066 in an effort to support its interpretation of ¶13.3. Because Jerome's interpretation of ¶13.3 shall not be an issue at trial, exhibit 1066 is irrelevant, and therefore, RedPrairie's motion shall be granted. Thus, Jerome's request for judicial notice, (Docket No. 193), is moot and shall be denied as such.

**IT IS THEREFORE ORDERED** that the defendant's motion in limine, (Docket No. 154), is **denied**.

**IT IS FURTHER ORDERED** that the plaintiff's motion in limine, (Docket No. 155), **is granted in part and denied in part**.

   (1) RedPrairie's motion to preclude Bandemer from testifying is denied. Bandemer shall be permitted to testify to the extent that the substance of his testimony was disclosed in his expert report and to the extent that his testimony constitutes rebuttal that he is qualified to offer.

   (2) RedPrairie's motion to preclude Hilliard from testifying is granted.

   (3) RedPrairie's motion to preclude Jerome's from introducing the deposition testimony of Brian Smith, Mike Taynor, Rohit Desai, and Jon Withers is granted.

**IT IS FURTHER ORDERED** that the plaintiff's 7.4 motion, (Docket No. 180), is **granted**.

**IT IS FURTHER ORDERED** that defendant's request for judicial notice, (Docket No. 193), is **denied**.

Dated at Milwaukee, Wisconsin this 9th day of June 2008.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge